IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL KESSELRING,

        Petitioner,

vs.                                               Case No. 10-3003-SAC

DAVID MCKUNE, Warden Lansing
Correctional Facility, and
STEPHEN N. SIX, Kansas Attorney General,

        Respondents.

**MEMORANDUM AND ORDER**

This case comes before the court on petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2006). (Dk. 1.) Respondents filed an answer and return (Dk. 14), and no traverse has been filed. Petitioner alleges that the State of Kansas violated his Sixth Amendment right to confront witnesses at his trial when the district court permitted the jury to hear inadmissible hearsay evidence. Petitioner also contends that he was denied his Sixth Amendment right to effective assistance of trial counsel. Having carefully reviewed the record and arguments, the Court denies the petition.

**Factual Background and Procedural History**

The facts in this case are not disputed by the petitioner or the respondents. (Dk. 1; Dk. 14). "A determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Darks v. Mullin*,

327 F.3d 1001, 1007 (10th Cir. 2003), *cert. denied*, 540 U.S. 968 (2003); *Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999).

As factual background, the court quotes the Kansas Court of Appeals' opinion that denied the petitioner's state habeas petition filed pursuant to Kansas Statutes Annotated (K.S.A.) § 60-1507:

> Michael Kesselring was convicted by a jury in 2003 of aggravated kidnapping, conspiracy to commit aggravated kidnapping, and first-degree murder. He was sentenced to a controlling term of life imprisonment with parole eligibility after 20 years, plus 234 months in prison. Kesselring filed a direct appeal, raising five issues. The Supreme Court affirmed the convictions in State v. Kesselring, 279 Kan. 671, 112 P.3d 175 (2005).
>
> Kesselring's convictions arose out of the disappearance and death of Dale A. Miller. A police investigation revealed Miller may have been connected to a drug ring run by his cousin, Michael Reece. The investigation also revealed that a large quantity of drugs had been stolen from the ring, and Miller was accused of the theft. 279 Kan. at 674, 112 P.3d 175.
>
> After Reece was indicted on federal drug trafficking charges, he provided law enforcement with information regarding Miller's disappearance. This information lead to the discovery of Miller's body, which bore three .22 caliber bullets. 279 Kan. at 674, 112 P.3d 175.
>
> Gary Holmes, the father of Reece's common-law wife, Heather, was the only eyewitness to Miller's murder. 279 Kan. at 674–75, 112 P.3d 175. Holmes was an admitted alcoholic and drug addict. 279 Kan. at 675, 112 P.3d 175. Holmes testified that he, Reece, and Kesselring discussed how to retrieve the stolen drugs from Miller. Reece provided two guns to the men, including a .22 caliber gun given to Kesselring. According to Holmes, the men abducted Miller at gunpoint. After a car ride, Holmes observed Kesselring shoot Miller, and Kesselring and Holmes threw Miller's body over the side of a bridge. 279 Kan. at 675–76, 112 P.3d 175.
>
> Several other witnesses testified they heard Kesselring admit to shooting Miller, including Heather and another acquaintance of the drug ring. In his defense, Kesselring testified he was running errands for his mother on the night in question and stopped by Reece's house to buy a joint. When he arrived, he saw Reece and others coming out of the house and Holmes getting in a car with a gun. Reece informed Kesselring that Miller had stolen $75,000 worth of drugs, and they were going to get him. Kesselring refused to go along with the group and returned to his mother's house. 279 Kan. at 677–78, 112 P.3d 175.

Kesselring's mother, Deloris Walker, testified he was living with her in the summer and fall of 2000, the time of the murder. She did not recall the specific night when the murder took place but testified Kesselring was always home on the Saturday and Sunday nights. She also stated Kesselring was in the habit of running errands for her on the weekends.

Kesselring filed the instant K.S.A. 60-1507 motion in June 2006, raising numerous claims of ineffective assistance of counsel. Included were allegations that the charging document was defective, that the district court erred in admitting Reece's statements because Reece had passed away prior to trial, and that Kesselring's attorney failed to file a notice of alibi defense.

Without holding an evidentiary hearing, the district court issued a memorandum decision addressing the charging document and hearsay issues. The court found the complaint was sufficient as a matter of law. The court further found Kesselring had been sufficiently apprised of the State's allegations and witnesses against him. This finding was based on the fact that Kesselring was given the witness list, Kesselring had a lengthy preliminary hearing, and Kesselring was provided with discovery. The court also noted that Kesselring failed to identify any specific testimony from Reece that Kesselring believed was improperly admitted.

The district court, however, did hold an evidentiary hearing with regard to the alibi issue. Kesselring's trial attorney testified at this hearing that he did not file a notice of alibi because Walker was unable to provide information regarding Kesselring's whereabouts at the specific time of the crime. Trial counsel also testified that Walker had indicated Kesselring was living with Walker as well as other places at the time. Trial counsel did not recall information about anyone else who could help with an alibi.

Kesselring also testified at the hearing. Kesselring testified he specifically told trial counsel to question his mother about Kesselring getting milk and cigarettes, and the fact that his mother gave him exact change, because his mother would remember that. He did not know if trial counsel asked Walker about these specific issues. Kesselring further testified that trial counsel told him it would not matter; a jury would not believe Walker because Walker was his mother. Although trial counsel agreed he may have said something about Walker's credibility, counsel noted that it would not have prevented him from using an alibi defense if it was strong enough.

After hearing the evidence, the district court found that trial counsel had met with Walker regarding an alibi defense and that Walker could not commit to a certain date about which she could testify to Kesselring's whereabouts. The court concluded Walker's testimony was, thus, too weak to constitute an alibi. As such, the court denied Kesselring's motion.

3

*Kesslering v. State*, 199 P.3d 188, 2009 WL 196193, at *1–2, No. 99,371 (Kan. App. Jan. 23, 2009) (per curiam).

**Standard of review**

A federal court does not sit as a super state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). It does not stand to correct errors of state law and is bound by a state court's interpretation of its own law. *Id.* As the United States Supreme Court recently stated:

> ... we have repeatedly held that "'federal habeas corpus relief does not lie for errors of state law.'" (Citations omitted.) "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U. S., at 67–68.

*Wilson v. Corcoran*, 562 U.S. \_\_,   (Nov. 8, 2010) (vacating and remanding because the lower court granted a writ of habeas corpus without finding that state prisoner's confinement violated federal law). Thus, this Court can grant relief only for a violation of federal law. *Id. See Morris v. Burnett*, 319 F.3d 1254, 1277 (10th Cir.), *cert. denied*, 540 U.S. 909 (2003).

Petitioner's propositions of error, as raised by appellate counsel on direct appeal and adjudicated on the merits by the Kansas Supreme Court, are exhausted and subject to review under the deferential standards of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *See Turrentine v. Mullin*, 390 F.3d 1181, 1188 (10th Cir. 2004), *cert. denied*, 545 U.S. 1106 (2005). Under AEDPA, this Court can grant federal habeas relief to an applicant only if he establishes that the state court "decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

4

Supreme Court of the United States; or ... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (1)–(2); see *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); *Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000), *cert. denied*, 533 U.S. 957 (2001).

A state court decision is "contrary to" clearly established federal law for the purposes of § 2254 when "the state court applies a rule that contradicts the governing law set forth in [U.S. Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the U.S. Supreme Court] and nevertheless arrives at a result different from [U.S. Supreme Court] precedent." *Williams*, 529 U.S. at 405–06. Thus, it is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be "diametrically different," "opposite in character or nature," or "mutually opposed" to the Supreme Court decision itself. *Id.* at 406.

A state court decision involves an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [U.S. Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "AEDPA's conception of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.' " *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008), *cert. denied*, __ U.S. __, 129 S.Ct. 1345 (2009) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)). "Thus, 'only the most serious

misapplications of Supreme Court precedent will be a basis for relief under § 2254.' " *Id*. (quoting *Maynard*, 468 F.3d at 671).

When a state court determines that a constitutional violation occurred but is harmless, a federal court may award habeas relief under § 2254 if "the harmlessness determination itself was unreasonable." *Fry v. Pliler*, 551 U.S. 112, 119 (2007). The Court assesses the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). *Fry*, 551 U.S. at 121; *see Welch v. Workman*, 607 F.3d 674 (10th Cir. 2010). That standard is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht*, 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

**Confrontation of Witnesses**

Petitioner first alleges that the State of Kansas violated his constitutional right to confront a witness because the trial court admitted hearsay testimony from a person who died before his murder trial and was not available for cross examination. On two occasions, hearsay from the decedent, Michael Reece, was admitted over the objection of the Petitioner's counsel. In other instances, Petitioner's counsel failed to raise a timely objection to alleged hearsay testimony.

The Court first addresses the admission of potential hearsay evidence to which no contemporaneous objection was made. In those instances, the trial court applied the state's contemporaneous objection rule and the Kansas Supreme Court found that

6

because of the lack of timely objection, the Petitioner was precluded from challenging the admission of those statements on appeal. *Kesselring*, 279 Kan. at 689-90. Under Kansas law, an issue is preserved for appeal only if a contemporaneous objection is lodged, so where a defendant fails to timely object at trial to alleged hearsay statements, he is precluded from challenging the admission of those statements on appeal. *State v. Mays*, 277 Kan. 359, 384, 85 P.3d 1208 (2004).

     A federal court may not review the petitioner's claim if the decision by the state court rests solely on a state law ground that is independent of the federal question and adequate to support it. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991) ("This rule applies whether the state law ground is substantive or procedural."). A state rule is independent if it relies on state law rather than federal law and is adequate if it is firmly established, regularly followed and evenhandedly applied. *McCracken v. Gibson*, 268 F.3d 970, 976 (10th Cir. 2001), *cert. denied*, 537 U.S. 841 (2002). The contemporaneous objection rule is both independent and adequate. *See Hunt v. Lee*, 19 F.Supp.2d 1212, 1214-15 (D.Kan.1998) (so finding).

     Accordingly, this Court is barred from reviewing petitioner's claims with respect to the statements not properly objected to at trial, unless petitioner shows cause for his default and actual prejudice as a result of the alleged violation of federal law, or demonstrates that this Court's failure to consider the claim will result in a fundamental

miscarriage of justice.[1] *Coleman*, 501 U.S. at 750. Petitioner has failed to show cause[2] for his procedural default and actual prejudice as a result of the alleged violation of federal law, or to demonstrate that this Court's failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. Accordingly, this Court examines in detail below only the two instances in which hearsay[3] statements from Michael Reece were admitted over counsel's timely objection. One statement was admitted through the testimony of Curtis Callarman, and another through the testimony of Heather Reece.

**Hearsay Statement of Curtis Callarman**

Petitioner's counsel timely objected when the prosecutor asked Curtis Callarman, a coconspirator, to describe a conversation that he had heard between Michael Reece, Gary Holmes, and the Petitioner. (R. XI, 1481.) The trial judge initially overruled the hearsay objection based on the coconspirator exception to hearsay, K.S.A. § 60-460(i), and permitted the testimony to continue, but later reconsidered that ruling and found that

---

[1] *See Bousley v. United States*, 523 U.S. 614, 623 (1998) (to make a showing of a fundamental miscarriage of justice, petitioner must demonstrate that constitutional error has probably resulted in the conviction of one who is actually innocent).

[2] Although Petitioner alleges that failure to object resulted from his counsel's ineffective performance, that claim itself was found defaulted by the state appellate court, *Kesselring v. State*, 2009 WL 196193 at *4-5, and thus fails to satisfy the cause requirement. *See Edwards v. Carpenter*, 529 U.S. 446 (2000) (holding that an ineffective assistance of counsel claim asserted as cause for a procedural default of another claim can itself be procedurally defaulted).

[3] The Court assumes for purposes of this motion that these two statements were in fact hearsay.

no exception to the hearsay rule applied. (R. XI, 1486–87). The challenged testimony follows:

> Q. Who was the first individual you heard speak concerning what might have occurred concerning the night before?
> A. Mike Kesselring said that Dale was dead and Mike Reece said that— [The Court overruled the defense's hearsay objection under the coconspirator exception, K.S.A. § 60-460(i).] Mike Reece asked him where the body was at and Gary Holmes said that they threw him over a cliff and Mike—Money Mike told them if the body wasn't buried and all the shell casings wasn't picked up it wasn't done right and it had to be finished.

(R. XI, 1481–82). The trial judge ultimately found that although she erred in allowing Reece's testimony, the testimony was not prejudicial to the Petitioner but was instead "insignificant" and "pretty meaningless." (R. XII, 1564-65).

### Hearsay Statement of Heather Reece

Petitioner's counsel also objected when Heather Reece, the wife of the deceased witness, was about to testify regarding statements made by her deceased husband, Michael Reece. (R. X, 1218.) The following exchange occurred:

> Q. What happened next?
> A. I got home and I asked him why.
> Q. You asked who, Mike Reece?
> A. Yeah, I asked Mice Reece why, why everything happened, why he had to – why things took place the way they did. Why did he involve my dad[4] and just, you know, just asked him why, basically why.
> Q. What happened then?
> A. You know, he made the usual accusations that I said before about me and Dale[5] and he wouldn't be surprised if I was involved with him and just stuff like that and –

---

[4] Heather Reece's father is not the Petitioner.
[5] "Dale" is not the Petitioner.

9

(R. X, 1218.) Defense counsel then made a hearsay objection, and the prosecutor rephrased his question so as not to illicit a hearsay statement from the wife. (R. X, 1218.) The prosecutor also told Heather that "what we can't do at this point is talk about what Mike Reece said, he is not here." (R. X, 1218.)

**Analysis**

The Kansas Supreme Court found the few words of hearsay from Heather Reece to be harmless. 279 Kan. at 691. This Court finds this to be a reasonable determination in light of the record, as noted below. Because there is no likelihood that the minimal hearsay uttered by Heather Reece had a substantial and injurious effect or influence in determining the jury's verdict, this finding of harmlessness will not be disturbed.

As to Callarman's testimony about Reece's statements, the Kansas Supreme Court found that the Petitioner had failed to brief the issue, so it was abandoned. *Kesselring*, 279 Kan. at 691–92. *See State v. Edwards*, 260 Kan. 95, 98 (1996) ("It is well settled that an issue neither briefed nor argued on appeal is deemed to have been abandoned.")[6] Because petitioner's allegation was rejected on state procedural grounds, as discussed above, this Court is barred from reviewing it, as Petitioner has not shown cause and prejudice, or a fundamental miscarriage of justice.

Further, after finding the issue abandoned, the Kansas Supreme Court affirmed the trial court's determination that admission of Reece's statements was harmless. Were

---

[6]Similarly, in his § 60-1507 motion, the Petitioner raised this issue but failed in his legal arguments to identify the improperly admitted testimony, so the Court deemed the issue abandoned. 2009 WL 196193 at *5.

this issue not procedurally defaulted, this Court would also find harmless error. Reece's hearsay statements consisted of the following: 1) unsolicited advice about how to conceal a crime; and 2) accusations that his wife, Heather, was involved with the victim, Dale Miller. Neither of these statements tends to incriminate the Petitioner in any way. Additionally, during the course of the trial, the prosecution presented a case that, when quantitatively assessed in the context of other evidence presented, included twenty-five other witnesses, some of whom directly incriminated the Petitioner in the crime. (R. IX, 950-63; XI, 1480-82.) The Petitioner even implicated himself in letters he wrote to a co-conspirator while the two were in county jail. (R. XI, 1504-13.) Therefore, this Court finds that the state court's harmless error analysis is neither contrary to nor an unreasonable application of clearly established federal law.

The Kansas Supreme Court also noted that Reece's statement was not testimonial and therefore it was not necessary to engage in a constitutional harmless error analysis under *Crawford v. Washington*. 279 Kan. at 692. To the extent that this was a ruling on the merits, it is not contrary to, nor does it involve an unreasonable application of, clearly established Federal law, nor was this decision based on an unreasonable determination of the facts in light of the evidence presented in the State court, as explained below.

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. The Confrontation Clause and the hearsay

rule are not coextensive. *Dutton v. Evans*, 400 U.S. 74 (1970). Thus evidence may violate the hearsay rule without violating the Confrontation Clause. *Crawford v. Washington*, 541 U.S. 36 (2004), held that "the Confrontation Clause prohibits the admission of testimonial hearsay unless the declarant is unavailable and there was a prior opportunity for cross-examination." *See United States v. Mendez*, 514 F.3d 1035, 1043 (10th Cir. 2008) (same), *cert. denied*, 553 U.S. 1044 (2008). However, the right to confrontation extends only to testimonial statements. *Davis v. Washington*, 547 U.S. 813, 822 (2006). *See United States v. Smalls*, 605 F.3d 765, 780 (10th Cir. 2010) (post-*Crawford*, "the Confrontation Clause simply does not apply to nontestimonial statements and thus "permits their admission even if they lack indicia of reliability.")

Although *Crawford* did not provide a comprehensive definition of "testimonial," it includes testimony in the nature of that given at a preliminary hearing, before a grand jury, or at a former trial, and statements made during police interrogations to establish or prove past events potentially relevant to later criminal prosecution. *Crawford*, 541 U.S. at 51-52; *Davis*, 547 U.S. at 822. The Tenth Circuit thus generally holds that "a statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime." *United States v. Summers*, 414 F.3d 1287,1302 (10th Cir. 2005); *Mendez*, 514 F.3d at 1043.

The Court notes that the Petitioner was tried in 2003 and that *Crawford* was not decided until 2004. *Crawford* does not apply retroactively, *see Whorton v. Bockting*, 549 U.S. 406, 409 (2007); *Brown v. Uphoff*, 381 F.3d 1219, 1226 (10th Cir. 2004), *cert.*

12

*denied*, 543 U.S. 1079 (2005), raising the issue whether the Kansas Supreme Court should have applied the pre-*Crawford* rule announced in *Ohio v. Roberts*, 448 U.S. 56, 66 (1970), to decide this Confrontation Clause issue. Under *Roberts*, the admission of hearsay does not violate the Confrontation Clause if the declarant was unavailable to testify and the statement, whether testimonial or not, bore "adequate 'indicia of reliability'." 448 U.S. at 66.

When determining whether a state court's decision involves an unreasonable application of clearly established Federal law, the Court must look to the law "existing at the time the defendant's conviction became final." *Williams*, 529 U.S. at 381. *See Stevens v. Ortiz*, 465 F.3d 1229, 1235 (10th Cir. 2006), *cert. denied*, 549 U.S. 1281 (2007). A criminal conviction becomes final when the availability of a direct appeal has been exhausted, and the time for filing a certiorari petition with the Supreme Court has elapsed or the Court has denied a timely certiorari petition. *Allen v. Reed*, 427 F.3d 767, 774 (10th Cir. 2005), *cert. denied*, 549 U.S. 1165 (2007), *citing Caspari v. Bohlen*, 510 U.S. 383, 390 (1994). Here, petitioner was convicted by a jury on March 18, 2003, and that conviction was affirmed by the Kansas Supreme Court on June 3, 2005. *State v. Kesselring*, 279 Kan. 671, 112 P.3d 175 (2005). No petition for *certioriari* was filed. Accordingly, Petitioner's conviction became final in the fall of 2005, by which time the 2004 *Crawford* decision was clearly established federal law. The Kansas Supreme Court was thus correct in relying upon *Crawford* in deciding the Confrontation Clause issue.

The Court examines de novo whether Michael Reece's statements were in fact testimonial. Reece's hearsay statements were made informally, out of court or custody,

to acquaintances and not police officers, under circumstances where a person in Reece's position would not objectively foresee that his statement might be used in the investigation or prosecution of a crime. *See Mendez*, 514 F.3d at 1043. His statements were thus not testimonial, and the Kansas Supreme Court's legal analysis on the Confrontation Clause was constitutionally sound.

Even assuming constitutional error, however, based on the Court's review of the entire state court record, the Court cannot conclude that any erroneous admission of hearsay statements had a substantial and injurious effect on the jury's verdict. *See Brecht*, 507 U.S. 619; *Stevens*, 465 F.3d 1229 (habeas relief is not warranted unless a Confrontation Clause error arising from the admission of a hearsay statement has a substantial and injurious effect or influence in determining the jury's verdict.)

**Effective Assistance of Counsel**

Petitioner next contends that his trial counsel provided constitutionally ineffective assistance of counsel. The standard governing a constitutional claim of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Williams*, 529 U.S. at 365. To obtain habeas relief, a petitioner must establish both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687, 688, 694; *Le v. Mullin*, 311 F.3d 1002, 1024–25 (10th Cir. 2002), *cert. denied*, 540 U.S. 833 (2003). This Court "may address the performance and prejudice components in any order, but need not address both if [petitioner] fails to make a sufficient showing for one." *See Cooks v. Ward*, 165 F.3d 1283, 1292–93 (10th Cir. 1998), *cert. denied*, 528 U.S. 834 (1999).

14

A claim of ineffective counsel is a mixed question of law and fact, subject to the AEDPA "unreasonable application of clearly established Federal Law" standard. *Cook v. McKune*, 323 F.3d 825, 832 (10th Cir. 2003); *see, e.g.*, *Williamson v. Ward*, 110 F.3d 1508, 1513 (10th Cir.1997). In evaluating counsel's performance, the court must apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689; *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999), *cert. denied*, 528 U.S. 1167 (2000). "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Strickland*, 466 U.S. at 689.

Even in circumstances where an attorney erred, "[i]t will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that counsel rendered reasonable professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986); *United States v. Smith*, 10 F.3d 724, 728 (10th Cir. 1993) (per curiam). A convicted defendant claiming ineffective assistance must identify the acts or omissions of counsel that are alleged to have been below constitutional standards. *Id.* The court must then determine whether, in light of the circumstances at the time of counsel's conduct, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.*

Petitioner identifies the following acts or omissions as the factual basis for his claim of ineffective assistance of counsel: (1) failure to file a notice of an alibi with the state district court, (2) failure to timely object to alleged hearsay evidence during trial,

15

and (3) failure to object to an allegedly defective amended complaint by use of a jury instruction. (Dk. 1.)

**Alibi Notice**

The Petitioner alleges that his trial counsel provided prejudicially ineffective assistance of counsel by failing to file a notice of alibi defense. He alleges that his mother, Delores Walker, would have provided him an alibi if his attorney had prompted her with certain questions. However, the Petitioner provides no support in his Petition for his assertions.

On July 25, 2007, Douglas County District Judge Paula B. Martin held an evidentiary hearing at which Petitioner's counsel testified regarding this issue. (R. I, 70–76.) After hearing the testimony, Judge Martin concluded that counsel's representation did not fall below an objective standard of reasonableness. (R. I, 76.) She also found that Ms. Walker was not an alibi witness because she lacked specific memories of the weekend Dale Miller was murdered. (R. I, 75.) "Accordingly, no notice of alibi was necessary." (R. I, 75.)

At the July hearing, counsel testified that he did not file a notice of alibi, because the Petitioner had no alibi. (R. I, 72.) Before making his decision not to use an alibi defense, counsel interviewed Ms. Walker on several occasions at her home, and she repeatedly was unable to substantiate the Petitioner's alibi. (R. I, 72.) Ms. Walker's cross-examination by the State confirmed that Ms. Walker was not an alibi witness:

> Q. On the Saturday and Sunday you say so that would be the 16th and 17th?
> A. Yeah.

> Q. And that is because you specifically remember that weekend that he was home with you or that without exception he always stayed at home on the weekend. Why are you remember that weekend?
> A. I'm not just referring to that one. He was home on the weekends, not just that one.
> Q. So it's not because you have a specific memory of him being home that weekend. It's just that he was always home on the weekend so you are assuming he was also home that weekend, is that fair? Is that what you're saying?
> A. I guess, yes.

(R. XII, 1623).

Because Ms. Walker was unable to say where the Petitioner was at the time of the murder and could not provide the Petitioner with an alibi, no notice of alibi was necessary. Counsel's decision not to file a notice of alibi is reasonable since filing was not required, and his actions were well within the wide range of reasonable professional assistance. He made an informed and strategic decision not to pursue an alibi with Ms. Walker after conducting an investigation, and generally, that decision will rest within the sound discretion of trial counsel. *See Strickland*, 466 U.S. at 690–91; *Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998), *cert. denied*, 525 U.S. 950 (1998).

**Hearsay Objections**

Petitioner next argues his trial counsel was ineffective for failing to object to the admission of hearsay statements of Michael Reece. In resolving Petitioner's § 60-1507 motion, the Kansas Court of Appeals found that Petitioner failed to identify specific hearsay evidence admitted that constituted reversible error. *Kesselring*, 2009 WL 196193, at *4–5. Specifically, the Kansas Court of Appeals deemed this issue abandoned because the Petitioner failed to identify specific statements that he believed

17

should have prompted a hearsay objection by his trial counsel. *Id.*; *see* Kan. Sup. Ct. R. 6.02(e).

It is a well settled rule of Kansas appellate practice that all claims raised on appeal must specifically identify where in the record they were raised and ruled upon in the court below. Kan. Sup. Ct. R. 6.02(e); *State v. Davis*, 284 Kan. 728, 733 (2007). When an appellant fails to designate a record which affirmatively shows error occurred, Kansas appellate courts presume the district court's action was proper. *Davis*, 284 Kan. at 733. Additionally, failure to brief an issue on appeal constitutes abandonment of that issue. *See Edwards*, 260 Kan. at 98. Thus, where, as here, an appellant identifies alleged hearsay statements in his statement of facts, but fails to address any particular testimony in his legal arguments, the issue is properly deemed abandoned. *See Kesselring*, 2009 WL 196193, at *4–5. Petitioner's claim was denied on this independent and adequate state procedural bar and this Court is now barred from reviewing it. Petitioner presents no cause and prejudice sufficient to overcome his default, nor does he demonstrate a miscarriage of justice. Accordingly, the claim is precluded from further review.

**Amended Complaint**

Lastly, Petitioner contends that his counsel was ineffective for failing to object to the charging complaint as jurisdictionally defective under state law. Petitioner contended that the complaint was jurisdictionally defective because it failed to include every element of the crime of conspiracy.

18

The Kansas Court of Appeals held that the complaint was not, in fact, defective. The standard used by that Court in assessing the validity of the complaint was consistent with federal precedent. *Compare Kesselring*, 2009 WL 196193, at *5–6 (examining whether the complaint set out the essential facts of a crime so the accused may prepare a defense, whether it specifically alleged the overt act in furtherance of a conspiracy, and whether it specified an act and an actor), *with U.S. v. Metropolitan Enterprises*, 728 F.2d 444, 453 (10th Cir.1984) ("To determine the sufficiency of an indictment the court examines the entire document to ascertain whether it contains the elements of the offense charged and apprises the accused of the nature of the charge so as to enable him to prepare a defense and to plead the judgment in bar."). Its legal analysis was constitutionally sound.

Additionally, the state court's ultimate determination that petitioner's counsel was not deficient for failing to raise a meritless challenge was also consistent with federal precedent. *See Martin v. Kaiser*, 907 F.2d 931, 936 (10th Cir. 1990) (Failure to raise a meritless argument cannot constitute ineffective assistance of counsel.) Counsel's failure to challenge the complaint as defective falls easily within the wide range of professionally competent assistance. Accordingly, petitioner is not entitled to habeas relief on this ground.

**Evidentiary hearing**

The court finds that an evidentiary hearing is not required in this case. "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550

U.S. 465, 474 (2007); *Anderson v. Att'y Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005) (finding that "an evidentiary hearing is unnecessary if the claim can be resolved on the record").

IT IS THEREFORE ORDERED that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

Dated this 18th day of January, 2011 at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge